# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs at Knoxville May 15, 2012

## STATE OF TENNESSEE v. GLENDA NASH CLEMMONS

**Direct Appeal from the Circuit Court for Marion County**
**Nos. 8109, 8271      Thomas W. Graham, Judge**

**No. M2011-02398-CCA-R3-CD - Filed July 31, 2012**

The appellant, Glenda Nash Clemmons, pled guilty in the Marion County Circuit Court to failure to appear in case numbers 8109 and 8721. In case number 8109, the trial court sentenced her to two years to be served as sixty days in jail and one year, ten months in community corrections. In case number 8271, the trial court sentenced her to three years to be served in community corrections and consecutively to the two-year sentence in case number 8109. Subsequently, the trial court revoked her community corrections sentences and ordered her to serve her effective five-year sentence in confinement. The appellant contends that the trial court erred by revoking her community corrections sentences and ordering her to serve her original sentences in confinement. She also contends that she did not receive all the jail credits to which she was entitled. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

B. Jeffery Harmon and Philip A. Condra, Nashville, Tennessee, for the appellant, Glenda Nash Clemmons.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; James Michael Taylor, District Attorney General; and Sherry Shelton, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual Background

On September 25, 2007, the appellant pled guilty in case number 8109 to failure to appear, a Class E felony, and received a two-year sentence to be served as sixty days in jail and the remainder in community corrections. The sentence was to be served consecutively to a prior sentence. On January 22, 2008, the appellant pled guilty in case number 8271 to failure to appear and received a three-year sentence to be served in community corrections and consecutively to the two-year sentence. On April 21, 2010, while the appellant was serving her two-year sentence in case number 8109, her community corrections supervisor filed a violation of community corrections affidavit, alleging that the appellant violated the conditions of her community corrections sentence by failing to report, failing to abide by her curfew order, failing to complete community service work, failing to obtain employment or prove disability status, failing to pay court costs, relocating without obtaining her supervisor's permission, and failing to maintain a land-line telephone. On June 9, 2011, the appellant's supervisor filed an addendum to the report, alleging that the appellant also violated the conditions of community corrections by being charged with evading arrest and escape.

At the revocation hearing, Officer William Travis Carter of the South Pittsburg Police Department testified that on May 9, 2011, he stopped a car, knowing that the driver, Sylvia Wooten, had a revoked license. The appellant was a passenger in the car. While Officer Carter was investigating Wooten, Officer Brenda Roth arrived at the scene, obtained the appellant's information, and learned the appellant had an outstanding warrant. Officer Roth arrested the appellant and put her into the back of Officer Roth's patrol car. Officer Carter put Wooten into the back of his patrol car, and the officers inventoried Wooten's car. When the officers returned to their patrol cars, Officer Roth discovered that the rear passenger window of his car was rolled down and that the appellant was gone. Another officer found the appellant hiding behind a church sign and transported her to the justice center.

On cross-examination, Officer Carter testified that he stopped Wooten's car because he recognized Wooten as the driver. He did not stop her for violating any traffic laws. Officer Carter said he did not know how the appellant rolled down the window in Officer Roth's patrol car. The patrol car's rear doors could not be opened from the inside, and he did not know how the appellant got out of the car.

John Young, the appellant's community corrections supervisor, testified that he had had "issues" with the appellant's failing to report as scheduled on a number of occasions. He said the appellant had been given the "privilege" of reporting every other week,

something not normally done for participants in community corrections. However, she stopped reporting to him, and he could not find her. He contacted the appellant's mother, and the appellant resumed reporting to him. That scenario was repeated at least three additional times until the appellant stopped reporting altogether. Young said he had not seen the appellant in his office since March 22, 2010.

Young testified that the appellant also failed to abide by her curfew order. On two home visits, Young found she was not at home after her 6:00 p.m. curfew. On another occasion, Young saw the appellant at Walmart at 8:00 p.m. The appellant was supposed to complete two hundred hours of community service work, but at the time of the hearing, she had only completed 10 hours. Young said that nothing indicated the appellant had tried to obtain employment and that she had not provided any proof of disability. The appellant had an oxygen tank with her when she came to Young's office, but she did not have one at Walmart. At least one time, Young tried to conduct a home visit with the appellant but found the home vacant. The appellant never told him she was relocating. The appellant was required to have a land-line telephone, but Young's contact with her was by cellular telephone. The appellant often gave her mother's telephone number as the appellant's contact number. However, the appellant did not live with her mother. Young said, "[S]o that's, in our eyes, not a line of contact." He said that he filed the community corrections violation affidavit in April 2010 but that the violation warrant was not served until May 2011. Young did not see the appellant during that time.

On cross-examination, Young testified that he began supervising the appellant on April 28, 2008. He acknowledged that he supervised her for almost two years before he filed the violation affidavit. He said that the appellant had alleged on numerous occasions that she was in the hospital but that he had no documentation for her hospital visits. He acknowledged that the appellant was wearing a "walking boot" at the hearing.

The appellant testified that when she first entered community corrections, Schultzie Skiles was her supervisor. The appellant said that she read in the newspaper Skiles had "quit" and that she "didn't really know what to do." The appellant had been taking chemotherapy treatments and was in and out of the hospital. She kept telephoning the community corrections office, contacted Travis Young, and started reporting to him. She went to all of her appointments with Young unless she was in the hospital and always telephoned him from the hospital. She also gave Young her medical records. She said, "I was in ICU for so long on a breathing machine, and, . . . I did the best I could with it." During 2008 and 2009, the appellant contracted pneumonia repeatedly. She said that she had been diagnosed with a leaky heart valve and congestive heart failure, that she was unable to work, and that she began receiving disability payments in April 2010. At that time, she lived with her mother and did not have a car or a driver's license. She also lived with her son for

a short period of time. She said that at some point, Young "texted" her and told her that he was "violating [her]." The appellant said she had missed only one appointment with him and was scared, so she stopped reporting to him. She said she had been in jail for 105 days since her arrest on May 9, 2011. At the time of her arrest, she was taking two steroids and medications for pain, her lungs, and sleeping issues. She was wearing the walking boot because she had a seizure in jail and broke her foot. Upon being questioned by the trial court, the appellant acknowledged that she did not report to Young from March 2010 to May 2011.

On cross-examination, the appellant acknowledged that on May 9, 2011, Officer Roth put her into the back of a patrol car. The window was rolled up. The appellant rolled down the window and opened the door. She said that she "didn't run off" but that she panicked and "left the police car." When asked if she had realized what she was doing, the appellant answered, "Not under as much medication as I was on, no." A police officer found her about fifteen minutes later.

At the conclusion of the hearing, the trial court revoked the appellant's community corrections sentences for failing to report to her community corrections supervisor for over one year. The court ordered her to serve her original sentences in confinement with credit for time served.

## II. Analysis

The appellant acknowledges that she failed to report to her community corrections supervisor but contends that the trial court erred by revoking her community corrections sentences because the sentences were imposed for Class E felonies that "[fall] at the lowest level of criminal offenses for felonies"; because there was no evidence she was convicted of evading arrest or escape; and because the State produced no evidence that she fabricated her health conditions. She also contends that the trial court should have resentenced her to the maximum sentences and placed her back in community corrections. Finally, the appellant contends that she did not receive all the jail credits to which she was entitled.

Generally, community corrections sentences are governed by the Tennessee Community Corrections Act of 1985. See Tenn. Code Ann. § 40-36-101. The Act provides as follows:

> The court shall . . . possess the power to revoke the sentence imposed at any time due to the conduct of the defendant or the termination or modification of the program to which the defendant has been sentenced, and the court may resentence the

-4-

defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration.

Tenn. Code Ann. § 40-36-106(e)(4). A trial court may revoke a community corrections sentence upon finding by a preponderance of the evidence that an offender violated the conditions of her suspended sentence. See State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). The trial court's revocation of a community corrections sentence will be upheld absent an abuse of discretion. Id. An abuse of discretion occurs if the record contains no substantial evidence to support the conclusion of the trial court that a violation of community corrections has occurred. See State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

In the instant case, the appellant concedes that she violated the conditions of community corrections by failing to report to her supervisor. Nevertheless, she asks this court to reverse the trial court's imposition of confinement. However, "an accused, already on [alternative sentencing], is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 Tenn. Crim. App. LEXIS 115, at *4 (Tenn. Crim. App. at Nashville, Feb. 10, 1999); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 136, at *7 (Tenn. Crim. App. at Nashville, Feb. 11, 2002). Nothing in the record indicates that the trial court abused its discretion by revoking the appellant's community corrections sentences and ordering her to serve the effective five-year sentence in confinement.

Regarding the appellant's being deprived of jail credits, her entire argument consists of the following statement: "[I]t appears from the record that she has not been afforded all the credits to which she was entitled." Because the appellant has not explained how she did not receive all of her credits, we cannot address the issue. See Tenn. Ct. Crim. App. R. 10(b).

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE